## ROBINSON v. THOMAS et al.

No. 4935.   Decided March 20, 1930.   (286 P. 625.)

*A. G. Horn,* of Ogden, for appellant.

*Le Roy B. Young,* of Ogden, for respondents.

STRAUP, J.

This action is one in ejectment. The plaintiff alleged that the state was the owner of about twelve acres of land on which there were deposits of salt from Great Salt Lake at or near Promontory in Box Elder county, Utah; that the plaintiff in virtue of a lease from the state was entitled to the possession of the lands and to remove salt therefrom for commercial purposes; that the defendants on or about July

1, 1928, wrongfully ejected him from the premises and themselves occupied them and removed salt therefrom to his damage.

The defendants filed a general denial. No right, title, or interest in or to the premises or to the possession of them was pleaded by the defendants. The case was tried to the court. It was tried on the theory of whether the state was the owner of the lands, and hence whether the plaintiff in virtue of his lease acquired any right or possession thereto. He contended the affirmative, and the defendants the negative, of the proposition. And as in effect stated by the defendants, they defended on what they called the weakness of the state's title and plaintff's right to the possession. At the conclusion of the evidence adduced by both parties, findings were made by the court that the "plaintiff had failed to prove that the state was the owner of the premises." That is the only finding made with respect to the issue of the state's title or ownership. The court further found "that the plaintiff entered into a lease with the state for the premises"; that prior to July 1, 1928, the defendants were in possession of the premises in virtue of a placer claim, notice of the location of which was filed on the————day of June, 1928; that "at the time of the filing of this action," which was July 9, 1928, the defendants were in possession of the premises mining and removing salt therefrom; that the plaintiff attempted to eject the defendants from the premises, but they refused to surrender possession; and that because of the failure of the plaintiff to prove title in the state, his lease from it was of no effect and gave him no right of possession. Upon such so-called findings, the court stated the conclusion of law "that the defendants are entitled to judgment against the plaintiff, no cause of action." A judgment was rendered accordingly. No findings were made or conclusions stated that the defendants had any right, title, or interest in or to the premises or to the possession of them, nor was there any such right, title, or interest determined or adjudicated. Generally speaking, the findings were them-

selves largely mere conclusions of law. The plaintiff appeals, assailing the findings, the conclusions, and the judgment.

The disposition of the case turns on the question of whether the state did or did not have title or right of possession. No direct finding was made as to such determinative factor or issue. That is, no direct finding was made as to whether the state was or was not the owner of the premises or entitled to the possession of them. At to that, the court merely found that the plaintiff failed to prove that the state was the owner of the premises. The plaintiff had the burden of proving such issue. If he failed to do so, a finding with respect thereto ought to have been made against him.

However, considering the finding which was made as being equivalent to a finding that the state was not the owner, how stands the case? On the record we think sufficient evidence was adduced to justify a finding that the state was the owner. The lands in question are situated █ along the northerly portion of Great Salt Lake and at or near the south boundary of Promontory Point, a point of land about twenty miles long and about four or five miles wide extending in a southerly direction in the lake, or rather between the lake on the one side and Bear River Bay on the other. The defendants do not dispute the proposition that when Utah was admitted into the Union of States in 1896, title in fee to all lands underlying navigable waters within the state vested in the state in its sovereign capacity, and that such lands may be disposed of by the state as it may elect, subject only to the paramount power of Congress to control such waters for purposes of navigation in commerce among the states and with foreign nations. We so held in the case of *State* v. *Rolio* (Utah) 262 P. 987. Following the rule announced by the Supreme Court of the United States in the case of *Shively* v. *Bowlby,* 152 U. S. 1, 14 S. Ct. 548, 38 L. Ed. 331, and other cases cited in the Rolio Case, we also held that such title vested in the state to all lands below

high water, and that the state had the right to dispose of such lands as it might elect. We further held that the common law as to riparian owners does not obtain in this state, and hence owners of land abutting navigable waters acquire no right or title to the bed thereof below high water. It is not alleged in the complaint, nor was evidence given to show, that Great Salt Lake was a navigable body of water. We, however, take judicial notice that the lake is about eighty miles long and from twenty to forty miles wide and is navigable or susceptible of navigation; that its waters are about 22 per cent salt, and wherever they are evaporated a deposit of salt is left on lands theretofore covered with water; and that the lake is wholly within the state. The lands in question at the commencement of this action were covered with salt about two feet deep, and are valuable only for such salt deposits. The plaintiff in virtue of his lease with the state had the right to remove such deposits for commercial purposes. The chief contention of the defendants is that the plaintiff failed to show where the meander line of the lake was in 1896 when Utah was admitted into the Union of States, and failed to show that the lands in question either at high or low water were covered with waters of the lake. No direct evidence was given to the then meander line of the lake, but we think ample and sufficient evidence was given to justify a finding that the lands in question at statehood were at high water covered with waters of the lake. Evidence was given to show that in 1896 the meander line of the lake was a considerable distance beyond the lands in question. It was further shown that what is known as the Lucin Railroad cut-off was constructed across the lake from east to west by the Southern Pacific Company in 1902, about six years after statehood. The railroad bed at or near Promontory Point was constructed partly on land and partly across waters of the lake. Where the lands in question are located, the cut-off was constructed across waters of the lake by a fill of large rock fourteen or fifteen feet high. At that time and at that place the waters of the lake extended a con-

siderable distance, from 500 to 700 feet north of the railroad fill and between the fill and the water's edge of the lake, and covered the lands in question. The evidence shows there were then no salt deposits on these lands. The deposits were made a considerable time thereafter. The general water level of the lake fluctuates from year to year or rises and falls in cycles. In the vicinity of the lands where the cut-off was constructed, the level of the lake after the construction from year to year began to rise until about 1914 or 1915, when the waters were seven or eight feet higher than they were in 1902, when the cut-off was constructed. After that the waters of the lake receded, but at the time of the trial, they, in the vicinity of the lands, were about three feet higher than they were in 1902. The construction of the fill necessarily interfered with the flow of the waters between the fill and the water's edge of the lake. Some of the waters washed and ran through openings between the rock and flowed to the north of the fill or between the fill and the water's edge of the lake. Some of the waters so flowing between the fill and the water's edge of the lake were because of the fill held there and were evaporated, which caused the salt to be deposited after statehood and after the cut-off was constructed.

We think there is ample evidence to justify a finding that the lands in question were a part of the bed of the lake when Utah was admitted as a state and that the title thereto then vested in the state. There is not anything to show that the state thereafter divested itself of title or right of possession. The defendants, over objections of the plaintiff, were permitted to put in evidence grants of lands made by the state to the Southern Pacific Company in 1902. But it is not shown that such grants included the lands in question. Neither by brief nor in argument do the respondents contend that the state by such grants parted with title to the lands in question, nor do they contend that they acquired any right, title, or interest in or to the lands or to the possession thereof by reason of any grant or lease from the Southern

Pacific Company. The defendants also, over objections of the plaintiff, were permitted to put in evidence a notice of location filed by them about a month before the commencement of this action purporting to locate such lands as a placer claim. But again neither by brief nor in argument do the defendants assert any right, title, or interest, or right of possession in or to any part of such lands, under or in virtue of such pretended claim. Nor is there anything to show that the lands in question are a part of the public domain and subject to location under the federal mineral acts. No finding of fact to that effect is made. A finding of fact is made that the defendants on or about the ———— day of June, 1928, located placer claims upon the lands in question "in the manner and form provided by the laws of the United States with respect to the location and filing of placer claims upon the public domain, and that at the time of the filing of this action by the plaintiff the defendants were in possession of said premises and were removing salt therefrom," for commercial purposes. But no finding is made that the lands then were a part of the public domain or were subject to location as placer claims. If the lands in question were at the time of statehood a part of the bed of the lake, they became the property of the state in fee simple, and hence are not subject to location under the federal mineral acts and under which the defendants attempted to locate and claim the lands as placer claims. Though such lands were subject to location as placer claims, yet it is doubtful whether the notice of location is sufficient to accomplish such purpose because of a doubtful and uncertain description of the claim with reference to a natural object or permanent monument as by the federal mineral acts and the laws of this state required. But as the point in such particular is not raised or argued, we express no opinion concerning it.

As already indicated, the action is in ejectment and one at law. *Park* v. *Wilkinson*, 21 Utah, 279, 60 P. 945; 6 Bancroft Code Pr. 6226. In saying that we are not unmindful of holdings in some jurisdictions, under Codes similar to ours,

that the fictions of the action of ejectment at common law to a large extent no longer exist, and that where equity and law are administered in the same forum and under a single pleading, and where an action to quiet title or to determine conflicting claims to real estate may be brought indifferently by one in or out of possession, there is a growing tendency to abandon action of ejectment in favor of the statutory action to quiet title. 9 Cal. Jur. 976, 977. While our Code, Comp. Laws Utah 1917, § 7247, enlarged the ancient jurisdiction of courts of equity in respect of suits to quiet title and to determine adverse claims (*Wey* v. *Salt Lake City*, 35 Utah 504, 101 P. 381), yet a suitor still has a choice of remedies to sue either in ejectment or to quiet title (*Gibson* v. *McGurrin*, 37 Utah 158, 106 P. 669). The plaintiff here did not seek to quiet title. The allegations in the complaint that the state was the owner of the lands and that the plaintiff held a lease from the state were made to show plaintiff's right to possession and that his ouster by the defendants was wrongful. Not anything but plaintiff's right to possession and his ouster was presented for adjudication, and nothing more was presented by the general denial of the defendants. Neither party sought or prayed to have title quieted. The plaintiff's prayer that the defendants be enjoined from interfering with the plaintiff's possession was but ancillary to the action of ejectment.

The case thus being one at law we may not review the record to determine the facts or to make or direct findings. We may review it only for error. We think the court erred in finding that the plaintiff had failed to prove that the state was the owner of the lands in question. As already indicated, we think there is ample evidence to justify a finding that the state is the owner and that the plaintiff under his lease was entitled to the possession of the lands. Treating the finding as made by the court to be a finding that the state was not the owner and the plaintiff under his lease not entitled to the possession, we think such a finding on the record so manifestly against the evidence,

and especially against the law applicable to the case, as to require the finding to be vacated.

The judgment of the court below is therefore reversed, and the case remanded for a new trial. Costs to appellant.

CHERRY, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.