## THOMAS v. FARRELL.

No. 5172.  Decided November 8, 1933.  (26 P. [2d] 328.)

*N. J. Harris,* of Ogden, for appellant.

*P. E. Norseth,* of Ogden, for respondent.

FOLLAND, J.

This is an action at law to recover for certain salt claimed to have been sold and delivered by plaintiff to defendant. From a judgment for defendant, the plaintiff appeals. The issues framed by the pleadings are the following: The complaint alleges that on January 13, 1928, at Ogden, Utah, plaintiff sold and delivered to defendant 1,000 tons of salt at 35 cents per ton to be harvested by the defendant; that no part of the purchase price has been paid except $120, leaving a balance due and owing of $230. In the second cause of action plaintiff alleges a sale to defendant of one car or 45 tons of salt at $5 per ton in the year 1927; that the salt was delivered and paid for except for a balance of $11.25 which has not been paid. Defendant answered and denied the allegations of the complaint and by counterclaim alleged that plaintiff fraudulently represented that he was the owner of certain salt lands and deposits at Promontory Point and had the right to sell or contract for the sale of salt located thereon which representations were false and

made with the intention to deceive; that defendant relied on such representations made and entered into the following agreement with the plaintiff:

"January 13, 1928.

"This will confirm purchase from Clabe Thomas to the Utah Grain & Elevator Co., of one thousand tons of salt (now located at Promontory Point, Utah,) to be harvested and loaded by the buyer, at thirty-five cents per ton.

"An advance of one hundred dollars is hereby acknowledged as part payment of the entire purchase.

"It is agreed and understood that the harvest should be completed by June first, but reasonable length of time will be allowed.

That believing such representations, plaintiff paid defendant, in addition to the $100 down payment, the sum of $50 on January 14, 1928, $10 on March 10th, and $10 on May 8th, or a total of $170; that pursuant to such agreement defendant's agents went to Promontory Point on or about June 20, 1928, for the purpose of harvesting the salt and were driven away by persons claiming the salt lands under placer locations; that on January 13, 1928, plaintiff was not the owner of the lands or the salt deposits and had no right, title, or interest therein nor power or authority to sell or dispose of the salt mentioned in such agreement and that defendant was unable to obtain the salt mentioned in such agreement; that by reason of orders for salt which he had obtained, he was unable to fill such orders and had to purchase salt elsewhere to his damage in the sum of $250. He prayed for such damages and a return of the $170 paid on the contract.

To the second cause of action defendant admitted the sale of one car of salt at $5 per ton and alleged plaintiff agreed to a reduction of 25 cents per ton and that the whole of the balance had been paid. Plaintiff's reply denying the affirmative allegations of the counterclaim admitting payment of $50 on January 14th and alleged that such sum was paid on another and different contract and was not applicable as payment to the contract in question; admitted he agreed to a reduction of 25 cents per ton on one car of salt

shipped in 1927, but that defendant had taken such reduction on two cars instead of one, leaving the balance sued for in the second cause of action. After a trial by the court without a jury, the court made findings as follows:

"I.   That on or about the third day of January, 1928, the plaintiff and the defendant entered into a written instrument admitted by the pleading whereby the defendant was to purchase from the plaintiff one thousand tons of salt at Thirty-five ($.35) Cents per ton. Said salt to be loaded by the said defendant at Promontory Point, Utah. That in pursuance of said instrument the defendant loaded about 40 cars of salt at 20 tons each and paid the plaintiff for said salt; thereafter in the spring and early summer, 1928, the said defendant through his agents attempted to remove additional salt from Promontory Point but was unable to do so and his agents were driven away from said place by one Delbert Thomas and Ed Sharp who claimed the land and salt in question by virtue of certain placer Mining claims, that plaintiff was present at Promontory Point at this time working for Delbert Thomas and Ed Sharp.

"II.   That plaintiff claimed title to the said salt by virtue of a certain lease issued to him by the Southern Pacific Railroad Co., that the defendant had obtained a lease from the Southern Pacific Railroad Company on the third day of January, 1928, for the west half of certain land at Promontory Point adjacent to said salt bed for the purpose of using the same solely and exclusively for the storage and operation in connection with the removal of salt from an adjacent lake bed, that on the third day of January, 1928, the Southern Pacific Railroad leased the east half of certain lands to the Promontory Point Pure Salt Company, a co-partnership consisting of C. Thomas, J. B. Robinson, and A. E. Harris, for the purpose of using the same solely and exclusively for storage and operation in connection with the removal of salt from adjacent lake beds; that under and by the terms of the said leases the Southern Pacific Railroad Co., did not lease any part of said salt bed, or convey any salt thereon, to said lessees, but expressly leased the adjacent land for storage and operation in connection with the removal of salt from said adjacent lake beds. That the said Southern Pacific Railroad Co. did not claim any right, title or interest to the said salt land or salt deposits on adjacent lake bed from which the salt was removed; that the said plaintiff was not the owner of said land or salt land or salt deposits nor did he have any right, title or interest therein, or power or authority to sell and dispose of the salt mentioned in the above and foregoing agreement.

"III.   That the lands in question from which the said salt was removed by said plaintiff and defendant and the said land upon which

said placer claimants Delbert Thomas and Ed Sharp, had located was the property of the State of Utah, and that the State of Utah had leased the same to one J. B. Robinson who claimed ownership thereof."

The judgment was that neither party recover and that both the complaint and counterclaim be dismissed and each party charged with its own costs.

Appellant assigns sixteen alleged errors, which, with the exception of two which are abandoned in this court by failure to argue, go to the point of failure of the court to make findings on material issues, the making of immaterial findings, that the judgment is contrary to the evidence and against law, and that the court committed error in overruling the motion for a new trial. The only questions necessary to be considered are whether the court erred in not making findings on material issues and whether the findings as made support the judgment.

The evidence shows the following: When the Lucin Cut-Off was built across the Great Salt Lake by the Southern Pacific Railroad Company, the main line of the road was built on a fill from 12 to 18 feet in height across the property in question cutting of a small bay or arm of the Great Salt Lake. This bay extends to the north of the main line. At times when the water of the Great Salt Lake is high, the salt water comes through the fill and covers the bay. The water when evaporated leaves a deposit of salt, which at certain seasons of the year is dry and may be harvested. The railroad company owned lands to the north of the salt deposit. In 1927 the plaintiff had a license from the railroad company to the land owned by it abutting on the north and partly to the east and west of the salt deposit. The leased land afforded access to the salt deposit although such deposit was not on any part of the land to which plaintiff had a license. Using the leased land as a base of operations the plaintiff had harvested the salt from the salt beds in previous years. The contract of January 13th which we have set out above contemplated the harvesting of the salt by the purchaser. The defendant contracted with one

Charles Carter to harvest the salt and Carter went to Promontory Point in January or February and gathered salt from the salt beds and placed it in piles along the spur track right of way of the railroad. From there it was sacked and placed in cars and shipped. Plaintiff testified that forty cars of 20 tons each were shipped on defendant's account. The defendant first testified that forty cars had been shipped but later produced his books or account which showed only twenty-four cars or approximately 480 tons. There was testimony that sixteen additional cars had been shipped by Carter. Plaintiff claimed the sixteen cars were shipped for the defendant while the defendant's testimony indicated they were shipped by Carter for J. B. Robinson. The testimony is far from satisfactory as to when or for whom the salt was harvested. Charles Carter who knew more about the actual harvesting and shipping of the salt than any one else died on or about June 25, 1928, so that his testimony was not available. George Carter, a son of Charles, a youth of fifteen, and two other men were sent to Promontory Point in June after the death of Charles Carter. They sacked and placed on cars the remainder of the salt which had been harvested by Charles Carter. When this had all been shipped, they undertook to harvest more salt when they were driven off the salt deposit by Ed Sharp and Delbert Thomas, a brother of plaintiff, who claimed the salt deposit under a mineral entry as a placer claim. In the meantime the situation had changed in certain other particulars. In October of 1927 plaintiff by written instrument had sold and conveyed to J. B. Robinson a one-third interest in his so-called lease or license from the Southern Pacific Railroad Company and any renewals thereof, and gave Robinson the exclusive right to sell salt and designated his as sales manager. On February 1, 1928, plaintiff's license of January 3, 1927, was superseded by a license from the railroad company to only the east half of the tract of land formerly licensed to plaintiff. The document was dated February 1, 1928, but licensed the use of the premises

described from January 3, 1928. The claimants in this license were J. B. Robinson, A. E. Harris, and plaintiff as a partnership doing business as Promontory Pure Salt Company. On the same date and with similar provisions the railroad company granted a license to defendant Farrell to the western half of the lands formerly licensed to the plaintiff. Both licenses recite that the premises are to be used by "licensee solely and exclusively for storage and operations in connection with removal of salt from adjacent salt bed." Defendant testified that the salt harvested by Carter for him was taken from the salt land adjoining the land which he had by license from the railroad company. There is also evidence that the salt was taken from both ends of the salt deposit. The accurate information is not available because of the death of Charles Carter. On or about June 3, 1928, Ed Sharp and Delbert Thomas made a placer filing on the salt beds. Sharp staked and claimed the west half and Thomas the east half. Claiming to be rightfully in possession, these men ordered defendant's agents off the salt beds when they attempted to go on for the purpose of harvesting salt on or about June 28th. Clabe Thomas, the plaintiff, was working with Sharp and Delbert Thomas on the salt beds about this time. He took no part in ordering Farrell's men off the deposit nor did he make any effort to aid them in going on the salt beds for the purpose of harvesting the salt. About this time, J. B. Robinson obtained a lease from the state of Utah and claimed the right of possession and right to harvest the salt by virtue of such lease. The lease from the state to Robinson was offered in evidence but rejected by the court and we do not have before us the date of lease, description of the lands covered, or other details connected with that transaction. The conflicting claims of Robinson as lessee from the state on the one hand and of Delbert Thomas and Ed Sharp claiming under a mineral filing led to an action in ejectment by Robinson against Thomas and Sharp. That case was decided in this court a short time before the trial

of the instant case in the district court of Weber county. The decision is *Robinson* v. *Thomas*, 75 Utah 446, 286 P. 625. In that case the trial court had found in favor of the defendant but on appeal this court held the evidence sufficient to justify a finding that the state of Utah was the owner of the salt lands involved and that plaintiff, as lessee of the state, was entitled to possession. The cause was remanded for a new trial.

The material issues raised by the pleadings on the first cause of action and on which there are no direct findings are whether there was an actual sale and delivery of salt as alleged; the amount paid by defendant, whether $120 as alleged by plaintiff or $170 as alleged by defendant. There is no finding of fact on the issue raised by the second cause of action, that is whether there was a balance of $11.25 unpaid on the car of salt sold in 1927. The issues raised by the counterclaim on which there were no findings of fact are: (1) Whether plaintiff practiced fraud in obtaining the contract in question; (2) whether the $50 paid by defendant on January 14th was to apply on the contract of January 13th or some other contract as alleged by the plaintiff; and (3) the question of damages—what orders, if any, the defendant obtained for salt which he was unable to fill and the amount and price of salt which he purchased in order to fill such orders.

It is obvious that the court did not find on all the material issues raised by the complaint and counterclaim. The rule with respect to the making of findings which has been adopted and followed in this jurisdiction is stated in *Dillon Implement Co.* v. *Cleaveland*, 32 Utah 1, 88 P. 670, 671, as follows:

"The law is well settled that the findings must be within the issues when compared with the pleadings, and must respond to, and cover, the material issues raised by the pleadings, and it is immaterial whether the issues arise upon allegations in the complaint and denied in the answer, or upon an affirmative defense pleaded in the answer, or upon a counterclaim, denied or treated as denied by the plaintiff. Hayne, New Trial & Appeal, § 240; 2 Spelling, New Trial, § 591. No

judgment can properly be rendered until there is a finding upon all the material issues." See *West* v. *Standard Fuel Co.* (Utah) 17 P. (2d) 291, 292.

It is further contended that certain of the findings do not respond to the issues and are immaterial. Any finding of an immaterial issue where not necessary to support the judgment will be disregarded as surplusage. It appearing that the court did not find on all the material issues it would follow that the judgment cannot be sustained unless there is something in the case to take it out of the general rule.

Respondent contends the assignments of error which attempt to attack the findings are insufficient to present any matter to this court under the rules of the court as construed in *Thomas* v. *Perry Irrigation Company*, 63 Utah 490, 227 P. 268, 269. The assignments contained in the case of *Thomas* v. *Perry Irrigation Co.*, supra, were in the following form: "The court erred in finding the facts set out in finding No. 7."

The assignment here is in substantially the following form:

"(2) The court erred in failing to find whether or not there was a sale of salt in question by plaintiff to defendant.

"(3) The court erred in failing to find the amount paid on the purchase price of the salt in question."

The difference in these assignments is apparent. The assignments made here are not open to the same objections found to exist in the case of *Thomas* v. *Perry Irr. Co.*, supra, and are sufficient under the rules to present the alleged errors to the court.

Among the facts found by the trial court are these:

"That the said plaintiff was not the owner of the said land or salt land or salt deposits nor did he have any right, title or interest therein, or power or authority to sell and dispose of the salt mentioned in the above and foregoing agreement."

The respondent contends that this finding is sufficient to sustain the judgment. The appellant, however, relies on

the rule that so long as the buyer of personal property is in the undisturbed possession of it, he cannot recover damages for a breach of warranty of title or set up want of title in the seller as a defense to an action to recover the purchase price. 35 Cyc. 541; *Johnson* v. *Oehmig,* 95 Ala. 189, 10 So. 430, 36 Am. St. Rep. 204.

This case, we think, is not subject to the general rule stated. Its facts are unique and different from those in any of the cases we have read which supports the rule. The trial court found that the plaintiff was not the owner of the salt or the salt beds. The facts in evidence show that he was not only not the owner but was not in possession of the salt attempted to be sold and had no right whatsoever by lease or other contract with, or as agent of, the owner of the salt deposits. Plaintiff was an entire stranger to the title to the salt and had he attempted to harvest the salt would himself have been a trespasser. At the time he made the contract, plaintiff had merely a license to go on certain railroad lands adjoining the salt beds for the purpose of "operations in connection with removal of salt from adjacent lake bed." He had and claimed no right or title to the salt except by or through this license from the railroad company. The court also found that the state of Utah was the owner of the salt deposit, and while the evidence is inadequate to support such a finding, it is sufficient to support a finding that plaintiff was not the owner. Such salt as was harvested and shipped in 1928 was obtained by trespass and those who were guilty of the trespass are or may be liable to the owner. A case in point is that of *Murphy* v. *S. C. & P. R. Co.,* 55 Iowa 473, 8 N. W. 320, 321, 39 Am. Rep. 175. There the plaintiff cut and stacked hay on uninclosed prairie land not owned by him. His only claim to ownership was that he cut and stacked the hay. The hay was burned by a prairie fire alleged to have been caused by the negligence of the defendant. The defendant requested the court to give the following instruction to the jury which it refused:

"If the jury finds from the testimony that the plaintiff had cut and stacked the hay, for the burning of which he seeks to recover in this action, upon land which he did not own, and if you further find that the plaintiff had no license or permission to cut the grass upon said land, and stack the hay therefrom thereon, the title to said hay so cut and stacked was not in the plaintiff, and he cannot maintain an action to recover for the destruction thereof by fire which burned over the prairie upon which the same was stacked."

On appeal the Supreme Court held this instruction should have been given, and, after reviewing numerous cases, said:

"We feel satisfied from the foregoing authorities, as well as upon principle, that by entering without license upon the land of another, and cutting grass therefrom and making hay, the plaintiff acquires no property therein. Under our statute, if he had removed the hay from the land, he would have committed a crime. Code, § 3983.

"As the plaintiff did not own the land upon which the hay was stacked, he had no constructive possession of it. Having neither title nor possession, it seems to be a necessary consequence that he cannot recover. Upon this branch of the case the authority is abundant . * * *

"If plaintiff could not recover if one had hauled the hay in question away, and appropriated it, a fortiori he cannot recover for a mere negligent act resulting in its destruction. If plaintiff should recover the value of the hay in question, the defendant could not plead the recovery in bar to an action by the real owner."

The facts of that case are stronger in favor of the plaintiff than those here since the plaintiff there had actually harvested the crop. Here the plaintiff did nothing toward harvesting the salt except to make the contract with defendant. The plaintiff had neither ownership nor possession of the salt which he attempted to sell. He was in no position at any time to transfer title or "the property" in the salt to the buyer and thus bring himself within the rule stated or the requirements of the Uniform Sales Act, Comp. Laws Utah 1917, §§ 5110, 5122, 5132, and 5172. The learned author of 1 Williston on Sales, p. 715, in discussing section 23 of the Uniform Sales Act, the same section as our 5132, says:

"It is a fundamental doctrine of the law of property that no one can give what he has not. One who has a title, which in his hands is voidable or subject to a right of recission by another, may transfer a title to a purchaser for value without notice, free from the possibility of

avoidance or recission; but one who has no title at all can transfer none, and that a buyer from him pays value in good faith without notice makes no difference." See *Jones* v. *Commercial Inv. Trust,* 64 Utah 151, 228 P. 896.

With reference to section 13, which is the same as our 5122, Mr. Williston says:

"The effect of this provision would seem to be to give the buyer the right to proceed immediately though his possession was not disturbed, and if later his position was interfered with he could bring another action on the implied covenant of quiet enjoyment and recover damages which he failed to recover in the first action. The same question arises in regard to covenants of warranty and quiet enjoyment in deeds of real estate."

At best the contract made by the parties was a mere attempt on the part of plaintiff to authorize the defendant to commit a trespass on the lands of another and take that to which he had no title and that which was never in his possession. The courts should leave the parties where it finds them, in a controversy between one who attempts to sell a commodity on the land of another to which he has no right whatsoever and the purchaser who commits trespass by going on such lands to take such commodity to which he can obtain no title or property by or through the seller and who thus makes himself liable as a trespasser to the true owner.

Nevertheless the findings of fact are not sufficient to sustain the judgment. There is no finding whatever as to the second cause of action. The amount involved is insignificant, yet plaintiff is entitled to have a finding by the trial court on the issues made with respect thereto. No issue was raised with respect to plaintiff's ownership of the salt he harvested and sold to defendant in 1927. The only issue presented was whether the full contract price had been paid.

The finding on the first cause of action that defendant loaded forty cars of salt of 20 tons each in 1928 and fully paid for said salt is not supported by evidence. If he obtained forty cars of 20 tons each or 800 tons, there is no

evidence that he paid for such an amount of salt. A finding that he obtained twenty-six cars of 20 tons each would find support in the evidence, and also that he had paid for such amount of salt. 800 tons at 35 cents amounts to $280, while the evidence at most shows payment of only $170. An item of $50 included in the amount paid was in dispute. Whether it was paid on the contract in question as alleged by defendant or on another contract as alleged by plaintiff is not settled by any finding.

Because of failure to make findings on all the material issues made by the pleadings and evidence the judgment is reversed. The cause is remanded to the district court of Weber county with directions to grant a new trial. Appellant to recover costs in this court.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFATT, JJ., concur.