CHARLES POYNTER, RESPONDENT, v. JAMES CHIPMAN AND ANOTHER, APPELLANTS.

DEED.—MEANDER LINE.—RECESSION.—A deed granting lands of the government bordering on an inland lake, which is navigable, which describes the land as bounded by the shore of the lake, gives to the grantee the right to follow the water in its recession even to the water's edge; but *quære* does the right extend beyond the subdivision granted?

WATERS.—INLAND LAKE.—NAVIGABLE WATERS. — According to the common law only those waters in which the tide ebbs and flows are navigable, and as to them a grant bordering upon them extends only to high-water mark; but an inland lake, 30 miles long and twelve miles wide, which is navigable for boats of 500 tons capacity, and which is navigated by freight, passenger, steam and sailing vessels, is not navigable within the meaning of the common law.

PLEADING. — EQUITABLE DEFENSE IN EJECTMENT. — ESTOPPEL IN PAIS.—An estoppel in *pais* in order to be relied upon as a defense in ejectment should be pleaded, and cannot be relied upon for the first time at the trial.

ESTOPPEL.— MISREPRESENTATION.— KNOWLEDGE OF FACTS.—*Semble*
that one who is acquainted with all the facts as to the owner-
ship of certain land, cannot plead an estopple in *pais* in eject-
ment founded upon a statement of the owner of such lands
that he had no objections to defendants' occupying such land,
even though relying upon such statement the defendants
erected buildings and made improvements thereon, because at
the time the defendants were acquainted with the fact that
they had no title.

APPEAL from a judgment of the district court of the
first district, and from an order refusing a new trial. The
opinion states the facts, except the following:

The record in this case shows no notice of appeal or
undertaking on appeal. The only document filed in the
supreme court was a copy of the statement upon motion
for new trial. No objection, however, was made on this
account and no motion was made to dismiss the appeal.

*Mr. John W. Judd* and *Mr. George Sutherland,* for the
appellants.

*Messrs. Rawlins and Critchlow,* for the respondent.

MINER, J.:

In March, 1887, David Count obtained a patent from
the United States for lots 3 and 4, section 35, Salt Lake
Meridian, Utah Territory. This land is admitted to join
Utah lake on the north, and the south line thereof is
admitted to run to the meander line running along the
old shore of Utah lake. It is also admitted that the
patent from the United States to Count called for the
meander line on the lake as the southern boundary of the
lots. In June following, Count conveyed to Poynter, the
plaintiff, a portion of this land, by full covenant warranty
deed. The land so conveyed adjoins Utah lake on the
north. Plaintiff's deed describes the land as running to
the waters of Utah lake, and along the north side of the

lake, etc.   On the trial, plaintiff introduced testimony
tending to show that the United States survey, upon which
the patent was granted to Count, was made in 1857, and
at that time the water's edge was a few feet north of two
buildings, called a " Pavilion " and "Saloon," erected by
the defendant in 1886, and being south of the meander
line; that in 1862 there was a very high rise in the water
of the lake, because of heavy snow in the mountains; and
that after that year the water receded to its former posi-
tion.   It was conceded by both parties that the water-line
of Utah lake fluctuated from year to year, being sometimes
higher and sometimes lower; that the fluctuations and
recessions of the water were gradual and by degrees, being
imperceptible, and not sudden.   The defendant introduced
proof tending to show that Utah lake was a body of fresh
water, about 30 miles in length by about 12 miles in width;
that it was navigable for boats of 500 tons' capacity, and
was navigated by both freight and passenger, steam, and
sail pleasure boats; that in the year 1886 the defendant
built these houses designated on the map as "Saloon,"
" Pavilion," and " Bath House," and that they were used
as a place of public resort for bathing and social purposes;
that, at the time the houses were built, they were built in
the waters of the lake, the water then being about twenty-
four feet north of the pavilion and saloon, which were
located south of the government meander line, referred to
in the Count patent; that in 1888 the waters of the lake
fell to a point south of the saloon; that the water fluct-
uated from year to year, standing sometimes south and
sometimes north of the pavilion and saloon; that at the
time this suit was brought the waters had receded, and
these houses built by defendant were left on dry land,
between the meander line and the waters of the lake.   The
plaintiff brought this action of ejectment to recover pos-
session of the land between Utah lake and the " meander
line," and claims a right to follow the water line, and

have title to the land to the water's edge. This claim is denied by the defendants, who claim that the same is public domain of the United States, and that they are occupying it as such. This is the principal question in the case.

The court instructed the jury, in substance, as follows: In this case the law is: "If it be true, if you find by a preponderance of the evidence, that Mr. Poynter, the plaintiff, owns the land down to the meander line of lake— That meander line is established by the government, and is supposed to be the water's edge. Indeed, that is the water's edge, and the abutting land owner, who owns down to that, owns to the water's edge. If the water's edge moves he has the right to move with it. If it recedes from the shore, he has the right to follow it up clear to the water's edge. If it comes back on him, he has to go back,—he loses that much; but he has the right to follow it to its edge, and no man has the right to get between him and the water's edge; and any man who settles between him and the water, either after it recedes or before it recedes, is there as a trespasser, and he has no more rights there than a trespasser. If you find from the evidence, by a preponderance, that Poynter owns the land to the meander line from the government, he is entitled to all the dry land that is made between him and the water's edge by recession of the waters, or by adding alluvium so as to make an accretion. Whether that is perceptible or not makes no difference. He is entitled to the occupation of the land continuously to the water's edge. Whether he owns by an absolute title in fee or not, he is entitled to the possession of it. And, if you find from the evidence that these are the facts, then it is your duty to find for the plaintiff, and give him possession of this land." Under the instructions the jury found a verdict for the plaintiff. The nature of the verdict does not appear from the abstract. From this verdict the court is asked to pre-

sume that an appeal was taken, although the abstract does not show whether an appeal was taken or not. Nor has rule 6 (27 Pac. Rep. viii.) of this court been followed in the preparation of the abstract. No objection having been made, we will consider the case as presented by the abstract.

The controversy here is not between adjoining owners or riparian proprietors, but between the plaintiff, as riparian owner, and a party claiming land under the water in front of him, which water had receded and left dry land between the meander line of the riparian owner and the lake itself. In the case of *Palmer* v. *Dodd*, 64 Mich. 474, 31 N. W. Rep. 209, the court says "that when the United States grant, by patent, land described by a legal subdivision, the grantee is entitled to all the lands embraced within that subdivision, and is not limited by the number of acres specified in the patent or upon the government plat. The meander lines have no significance as boundaries, and are not intended as such, but are run simply to afford a means of computing the area contained in the fraction which the government requires payment for on sale of the public domain." In *Clute* v. *Fisher*, 65 Mich. 48, 31 N. W. Rep. 614, the court says "that the soil under the water of an inland lake does not belong to the general government or to the state, * * * and that private ownership of lands bounded on navigable fresh water is not restricted to the meander line." *Webber* v. *Boom Co.*, 62 Mich. 626, 30 N. W. Rep. 469. In *Lincoln* v. *Davis*, 53 Mich. 375, 19 N. W. Rep. 103, the court holds that the paramount rights of the public to be preserved in the Great lakes are those of navigation and fishing, and this is best accomplished by limiting the grants of land bordering on the Great lakes to low water mark; and that, while the riparian owner on the Great lakes is entitled to occupy the land to low water mark, he also has the right to con-

struct warehouses or piers in the water in front of his premises, in aid of, and not obstructing navigation. In *Railroad Co.* v. *Schurmeir,* 7 Wall. 288, the court says: "The court does not hesitate to decide that congress, in making a distinction between streams navigable and those not navigable, intended to provide that the common law rules of riparian ownership should apply to lands bordering on the latter, but that the title to lands bordering on navigable streams should stop at the stream, and that all such streams should be decided to be and remain public highways. 3 Kent, Comm. (10th Ed.) 562, and note. In *Hardin* v. *Jordan,* 140 U. S. 380, 381, 11 Sup. Ct. Rep. 808, 838, the court says: "If the boundary of the land granted had been a fresh water river, there can be no doubt that the effect of the grant would have been such as is given to such grants by the law of the state, extending either to the margin or center of the stream, according to the rules of that law. It has been the practice of the government from its origin, in disposing of the public lands, to measure the price to be paid for them by the quantity of the upland granted, no charge being made for the lands under the bed of the streams or other body of water. The meander lines run along or near the margin of such waters are run for the purpose of ascertaining the exact quantity of the upland to be charged for, and not for the purpose of limiting the title of the grantee to such meander lines. It has frequently been held, both by the federal and state courts, that such meander lines are intended for the purpose of bounding and abutting the lands granted upon the waters whose margins are thus meandered; and that the waters themselves constitute the real boundary. * * * It has never been held that the lands under water, in front of such grants, are reserved to the United States, or that they can be afterwards granted out to other persons, to the injury of the original grantees. The attempt to make

such grants is calculated to render titles uncertain, and to derogate from the value of natural boundaries, like streams and bodies of water." *Mitchell* v. *Smale,* 140 U. S. 406, 11 Sup. Ct. Rep. 819, 840. "With regard to grants of the government for lands bordering on tide water, it has been distinctly settled that they only extend to high water mark, and that the title to the shore and lands under water in front of lands so granted inures to the state within which they are situated, if a state has been organized and established there. Such title to the shore and lands under water is regarded as incidental to the sovereignty of the state,—a portion of the royalties belonging thereto, and held in trust for the public purposes of navigation and fisheries,—and cannot be retained or granted out to individuals by the United States." Where the title is in the state, the land is held subject to state regulations and control, subject, however, to the regulations which may be made by congress with regard to public navigation and commerce; and it depends upon the law of each state as to what waters and to what extent the power of the state over the land under water shall be exercised. In *Barney* v. *Keokuk,* 94 U. S. 324, following the settled law of Iowa, it was held that the riparian proprietor on the banks of the Mississippi extends only to ordinary high water mark, and that the shore between high and low water mark, as also the bed of the river, belonged to the state. The same rule was held under the laws of California. *Packer* v. *Bird,* 137 U. S. 661, 11 Sup. Ct. Rep. 210. In Illinois and Mississippi a different doctrine prevails. There it is held that the title of the riparian proprietor extends to the middle of the current, in conformity to the rule of common law; that the beds of all streams, whether navigable or not, above the flow of the tide, belong to the proprietors of the adjoining land. *St. Louis* v. *Rutz,* 138 U. S. 226, 11 Sup. Ct. Rep. 337. In the case of *Middleton* v.

*Pritchard,* 3 Scam. 510, it is held that where the government has not reserved any right or interest that might pass by the grant, nor done any act showing an intention of reservation,—such as platting or surveying,—the grant must be construed most favorably to the grantee. As to what will pass by a grant bounded by a stream of water or a lake, at common law, depends upon the character of the water. If it were a navigable stream or lake, the rights of the riparian proprietor extended only to the high water mark. If the stream was not navigable, the rights of a riparian proprietor extended to the thread of the stream. But, at common law, only arms of the sea and streams where the tide ebbs and flows are deemed navigable. Streams above tide water, although navigable in fact, were not deemed navigable in law. *Walker* v. *Shepardson,* 4 Wis. 486. Chancellor KENT, in the third volume of his Commentaries (pages 562, 563, note), lays down the rule that all grants of the United States bounded upon a river not navigable at common law entitled the grantee to all islands lying between main land and the center thread of the stream. The United States have not repealed the common law as to the interpretation of their own grants, nor explained what interpretation or limitation should be given to, or imposed upon, the terms of ordinary conveyances which they use; but these are left to the principles of the common law and the rules adopted by each local government where the lands may lie. Section 2476, Rev. St. U. S., providing that all navigable waters shall be public highways, does not change the rule. 3 Kent, Comm. (10th Ed.) 560-564, and note.

The rights of the plaintiff in this case depend entirely upon the doctrine of riparian proprietors. Practically the common law has prevailed in this Territory, and the code without this basis to rest upon, would not only fail to provide for the great mass of affairs, but would lack

the means of a safe construction. There is no tide water in this Territory, and therefore no water which, by the technical meaning of the term "navigable" at common law, would come within it. The general rule of the common law is applicable to inland lakes which are not of such a size or importance as to be classed with the great navigable lakes of the country, and we do not consider that we should depart from that rule in this case. The fact that Utah lake is navigated or navigable does not change the rule in this case. *Smith* v. *City of Rochester*, 92 N. Y. 463; *Cobb* v. *Davenport*, 32 N. J. Law, 369; *Lorman* v. *Benson*, 8 Mich. 18; *Rice* v. *Ruddiman*, 10 Mich. 125; *Ledyard* v. *Ten Eyck*, 36 Barb. 102; *Lembeck* v. *Nye*, 47 Ohio St. 336, 24 N. E. Rep. 686; *Ridgway* v. *Ludlow*, 58 Ind. 248; *Beckman* v. *Kreamer*, 43 Ill. 447; *State of Indiana* v. *Milk*, 11 Biss. 197, 11 Fed. Rep. 389; *Stoner*, v. *Rice*, 121 Ind. 51, 22 N. E. Rep. 968; *Moore* v. *Robbins*, 96 U. S. 530; *Hardin* v. *Jordan*, 140 U. S. 371, 11 Sup. Ct. Rep. 808, 838; 3 Kent, Comm. (10th Ed.) 560-570; *Railroad Co.* v. *Schurmeier*, 7 Wall. 272; *New Orleans* v. *U. S.*, 10 Pet. 717; *Banks* v. *Ogden*, 2 Wall. 67; *Jefferis* v. *Land Co.*, 134 U: S. 178, 10 Sup. Ct. Rep. 518; *St. Louis* v. *Rutz*, 138 U. S. 226, 11 Sup. Ct. Rep. 337; The Daniel Ball, 10 Wall. 557; *Mitchell* v. *Smale*, 14 U. S. 406, 11 Sup. Ct. Rep. 819, 840. We think the court made no mistake in charging the jury that if the plaintiff owned the land to the meander line along the old shore of the lake, by patent from the United States, he would be entitled to recover all the dry land made by recession of the water between such meander line and the water's edge. This case comes clearly within the rule laid down in *Mitchell* v. *Smale*, 140 U. S. 406, 11 Sup. Ct. Rep, 819, 840, and *Hardin* v. *Jordan*, 140 U. S. 371, 11 Sup. Ct. Rep. 808, 838.

The record shows that, while there was a slight rise

and fall of the water in the spring of the year for several years prior to the commencement of this suit, yet the recession of the water was gradual and by degrees, being imperceptible, and not sudden. The plaintiff's title to the meander line along the old shore of the lake was conceded. The record does not show that any damages were allowed the plaintiff. Therefore the exceptions to the charge of the court on the subject of the rapid recession of the water, as to the plaintiff's right to recover, whether he owned the absolute title in fee or not, and upon the subject of damages, are not important to be considered in this case, as the charge was harmless so far as these questions were concerned.

The defendant requested the court to charge the jury that, "if you believe from the evidence that in 1887 the plaintiff stated to the defendants that he had no claim on the land below the 'meander line,' and that the land in dispute is below the meander line, and that he had no objections to their occupying such land, and the defendants, upon the faith of such statements made by the plaintiff, rebuilt their pavilion, and made other improvements thereon, and continued to use and occupy such land, then your verdict should be in favor of defendants in this case." This request was refused, and the defendants excepted. It must be remembered that the answer filed in this case, as shown by the abstract, simply "denies plaintiff's title and ownership, and also his right to recover." No other defense is set up as against the plaintiff's right. No license, lease, or estoppel is pleaded. The whole defense was based upon the claim that the land in question belonged to the United States. The principle invoked by this request is that one should be estopped from asserting a right to property upon which he has, by his own conduct, misled another; who supposed himself to be the owner, or to have a right to make expenditures thereon. "But this salutary principle can-

not be invoked by one who, at the time the improvements were made, was acquainted with the true character of his own title, or with the fact ·that he had none." *Brant* v. *Iron Co.*, 93 U. S. 326; *Henshaw* v. *Bissell*, 18 Wall. 255; *Steel* v. *Refining Co.*, 106 U. S. 456, 1 Sup. Ct. Rep. 389. It cannot be contended that the defendant did not know all about the title to the land at this time. He claimed then, and for a long time prior, that the title was in the government. His whole defense was based upon that claim. This was the theory upon which the case was tried, and the pleadings do not present any other issue. 2 Estee, Pl.· & Pr. §§ 3760, 3772, 3774. Upon the whole record, we find no reversible error. The judgment of the lower court is affirmed, with costs.

ZANE, C. J., concurred.