## MONROE et al. v. STATE et al.

No. 6964. Decided December 20, 1946. (175 P. 2d 759.)

See 45 C. J. Navigable waters, sec. 7; 27 R. C. L. 1302.; Title to bed of natural lake, notes, 23 A. L. R. 757; 112 A. L. R. 1114. See, also, 27 R. C. L. 1373.

*Elias Hansen,* of Salt Lake City, for appellants.

*Grover A. Giles,* Atty. Gen., *C. N. Ottosen,* Asst. Atty. Gen., and *Milton A. Melville,* of Fillmore, for respondents.

PRATT, Justice.

What is a navigable lake? This issue arises in a suit in which plaintiffs and defendants each seek to quiet title to the bed of Scipio Lake, in Millard County, this State. Plaintiffs own property on the shores of the lake and the defendant State of Utah has leased part of the bed of the lake to defendant George E. Brown, for grazing purposes. The grazing brought plaintiffs and Brown in conflict.

If the lake was navigable when this state was admitted to the Union plaintiffs should fail. Sec. 86-1-14, U. C. A. 1943; *Poynter* v. *Chipman,* 8 Utah 442, 32 P. 690; *Knudsen* v. *Omanson,* 10 Utah 124, 37 P. 250; *State* v. *Rolio,* 71 Utah 91, 262 P. 987; *Robinson* v. *Thomas et al.,* 75 Utah 446, 286 P. 625; and annotation 23 A. L. R. 757.

If the lake was non-navigable at that time plaintiffs should prevail. In addition to the above authorities: Annotation 112 A. L. R. 1114; *State* v. *Aucoin,* 206 La. 787, 20 So. 2d 136, at page 158; *United States* v. *Appalachian Power Co.,* 311 U. S. 377, 61 S. Ct. 291, 85 L. Ed. 243; *United States* v. *State of Oregon,* 295 U. S. 1, 55 S. Ct. 610, 79 L. Ed. 1267; *United States* v. *State of Utah,* 283 U. S. 64, 51 S. Ct. 438, 75 L. Ed. 844; *United States* v. *Holt Bank,* 270 U. S. 49, 46 S. Ct. 197, 70 L. Ed. 465; *State of Oklahoma* v. *State of Texas,* 258 U. S. 574, 42 S. Ct. 406, 66 L. Ed. 771; and *Gratz* v. *McKee,* 8 Cir., 270 F. 713, 23 A. L. R. 1393. (The dissenting opinion in the Louisiana case and the annotations of 23 A. L. R. and 112 A. L. R. cover the authorities upon this question rather thoroughly. The Louisiana case was decided in 1944. Sec. 86-1-14, U. C. A. 1943, by its terms excludes the beds of non-navigable lakes from the legislative declaration of ownership.)

The lower court found in favor of defendants and plaintiffs have appealed.

Conveyances to plaintiffs and their predecessors in interest are by lot and section number so no claim can arise that plaintiffs' property rights are specifically limited by description to the meander line of the lake.

Among the facts found by the lower court are these: At the time Utah was settled, Scipio Lake was a natural lake; a 2 foot dam was, about that time (1867), built at the lower end of the lake; that the lake had an extreme length of about 1½ miles, and a maximum width of about ⅝ of a mile; that it had an average depth of 4 to 5 feet and covered an area when filled to capacity of the natural basin of approximately 580 acres (plaintiffs contend 277 acres); that the Federal Government surveyed the lake in 1871, fixing its meander line, fixing the length of the lake at 1¾ miles and width of ¾ mile; that it has maintained that size until the present time, except for dry years when irrigation lowered it considerably; that the meander line fixed the approximate size of the lake when this State was admitted to statehood (Jan. 4, 1896); that it has not been used for transportation of "goods of commerce"; that it has no connection with navigable streams or other navigable bodies of water; that it has been used for boating, fishing, and swimming; and that its surroundings are such it appears improbable the lake will ever be valuable as a highway for commerce. The court then makes this statement as a part of his findings of fact:

"* * * that in view of the trend of decisions in recent years to view similar shallow bodies of water as navigable, the Court finds that Scipio Lake at the time Utah was admitted to the Union was a navigable body of water * * *"

This is a conclusion of law supported by the court's explanation of why he believed it necessary. The conclusion of navigability is repeated as paragraph one of his conclusions of law. We are of the opinion that navigability should not be determined without regard to practical con-

siderations. The fact that the lower court included the explanation impresses one with the thought that he thought the lake was not, as a matter of fact, navigable, but, due to the idiosyncrasies of the law, it must be so held.

Scipio Lake is comparatively small and so located that, as stated by one witness, it is easier to go around it than to cross it. The public left to itself, is not going to select the hard way of travel, and if it is a short cut to go around it, that short cut will be used. These facts ■ considered in the light of the probability of the future of that lake developing as it has in the past, as a reservoir for irrigation, are ample support for the court's finding that it is improbable the lake will ever be valuable as a highway for commerce. Such a finding is inconsistent with the idea that

"The natural navigation of the river is such that it affords a channel for *useful* commerce." (Italics ours.) (Quoting Mr. Justice Hughes in *United States* v. *State of Utah,* supra [283 U. S. 64, 51 S. Ct. 445]).

The author of the cited opinion also uses the expression "To meet the *needs* of commerce." (Italics ours.) The factual differences between that case and this must not be lost to our sight. There the court was dealing with miles of river crossing state lines which might easily be broken up into navigable and non-navigable areas. There was value in the use of such long stretches of water—they were useful—the public had need for them. But Scipio Lake is so small it must be treated as a unit. It, as a unit, is either valuable for transportation or it is not valuable. There is no evidence justifying any conclusion that it is likely ever to develop as a valuable means of public commercial transportation. Obviously its navigability should not be governed by our powers of imagination to vision what we deem sufficient to make it such a public waterway.

In *Harrison* v. *Fite,* 8 Cir., 148 F. 781, 783, cited in the Louisiana case (dissenting opinion) of our list ■ above, there is some discussion of the element of

usefulness. We quote therefrom:

"To meet the test of navigibality as understood in the American law a water course should be susceptible of use for purposes of commerce or possess a capacity for valuable floatage in the transportation to market of the products of the country through which it runs. It should be of practical usefulness to the public as a public highway in its natural state and without the aid of artificial means. A theoretical or potential navigability, or one that is temporary, precarious, and unprofitable, is not sufficient. While the navigable quality of a water course need not be continuous, yet it should continue long enough to be useful and valuable in transportation; and the fluctuations should come regularly with the seasons, so that the period of navigability may be depended upon. Mere depth of water, without profitable utility, will not render a water course navigable in the legal sense, so as to subject it to public servitude, nor will the fact that it is sufficient for pleasure boating or to enable hunters or fishermen to float their skiffs or canoes. To be navigable a water course must have a useful capacity as a public highway of transportation.  *  *  *."

In the Louisiana case [206 La. 787, 20 So. 2d 154], the prevailing opinion states the law to be (as to navigable water) : ▮

"It is that which, by its depth, width, and *location* is rendered available for commerce whether it be actually so used or not." (Italics ours.)

We believe that location is an important factor in this western mountainous and desert country. The writer has in mind a lake above timber line and near the top of a 10,000 foot mountain peak which from the standpoint of depth and width would have floatage potentialities sufficient for the transportation of goods—but to where? That's the question. Furthermore it is almost a hands and knees climb to get to that lake. To hold it to be a navigable body of water would be an oddity to say the least. Sailing that lake, one would get nowhere fast.

In the case of *Gratz* v. *McKee*, supra, speaking of a stream, the court quoted the following language from a Washington case as the weight of authority:

"It must be so situated, and have such length and capacity, as will enable it to accommodate the public generally as a means of transportation." Page 716 of 270 F., Page 1396 of 23 A. L. R.

In *United States* v. *Holt State Bank,* supra, the term "useful commerce" is used and these words were adopted in the case of *United States* v. *State of Utah.*

It seems fair to say from all of these decisions that navigability is not dependent merely upon the physical capabilities of the particular body of water to support transportation of goods. The public interest in such a body of water arises only when it is so situated that it becomes or is likely to become a valuable factor in commerce.

In addition to the facts found by the lower court, there is evidence in the record that the only clear part of the lake in the early days was its center, that bullrushes and cattails covered part of it; and that part was sod used for haying, which was so soft in places that an ox sunk through it. There is also evidence of a growth upon its bed that cattle would wade out to eat. In some of the survey reports the term "swamp" is used as to part of it. In the winter it froze over. Since statehood and since the dam has been increased considerably in height, there have been years when the lake went dry, presumably from irrigation use and dry weather. All these facts point away from the idea of navigability. If we hold the principle set out in the case of *United States* v. *Appalachian Power Co.,* supra [311 U. S. 377, 61 S. Ct. 299], as applicable here there is still the factor of value or usefulness involved. The principle of that case, to which reference is made, is this:

"A waterway, otherwise suitable for navigation, is not barred from that classification merely because artificial aids must make the highway suitable for use before commercial navigation may be undertaken."

But the court also says:

"There must be a balance between cost and *need* at a time when the improvement would be *useful.*" (Italics ours.)

This is also said:

"The tests as to navigability must take these variations into consideration."

The words "these variations" refer to a comparison made between the heavy traffic of the harbors of our seacoast and the traffic of the sparsely settled regions of the western mountains.

For the reasons given we are of the opinion that Scipio Lake was not navigable at the time this State was admitted to the Union. We believe the evidence justifies a finding of the facts as we have set them out in this opinion, and that the conclusions and decree should be in favor of plaintiffs. The decree of the lower court is reversed and the cause remanded for findings, conclusions and decree to conform to this opinion. Costs to appellants.

LARSON, C. J., and McDONOUGH, and WADE, JJ., concur.

WOLFE, J., concurs in the result.