[No. 33155. Department Two. October 6, 1955.]

CLARENCE KEMP *et al., Respondents,* v. WILLIAM R. PUTNAM
*et al., Appellants,* DON EASTVOLD, *as Attorney
General, Respondent.*[1]

[1]Reported in 288 P. (2d) 837.

*Patterson, Maxwell & Jones,* for appellants.

*Olwell & Boyle, The Attorney General* and *Joseph T. Mijich, Assistant,* for respondents.

ROSELLINI, J.—The respondents, Clarence Kemp, West End Sportsmen's Club, a corporation, and Washington State Sportsmen's Council, a corporation, commenced this action to abate a public nuisance and restrain the appellants from interfering with respondent Kemp and members of the respondent corporations in the exercise of their right to fish the Quillayute and Bogachiel rivers.

Appellant Olga M. Anderson holds the record title to certain real property which she is selling by real-estate contract to appellants William R. Putnam and Eva J. Putnam, his wife. The Sol Duc and the Bogachiel rivers join at the northeasterly corner of appellants' property to form the Quillayute river, which is approximately five miles long. The Quillayute flows along the north boundary and the Bogachiel along the east boundary of the property. Ap-

proximately twenty-four hundred feet of the property abuts on these two rivers.

On February 10, 1954, the state game department was permitted to intervene in the action to assert its claim that the streams are navigable and that the waters and beds of the Bogachiel and Quillayute rivers, extending to the ordinary line of high water upon each side of said rivers, are the property of the state of Washington, pursuant to Art. XVII, § 1, of the state constitution.

The appellants demurred to the complaint on the grounds that there was a defect of parties plaintiff and that the state game department did not have legal capacity to sue. The demurrer was overruled. On the day of the trial, over the objection of the appellants, Don Eastvold, as attorney general of the state of Washington, was permitted to intervene, adopting the complaint of the state game department.

At the conclusion of the trial, the court found, *inter alia*, that the Quillayute and Bogachiel rivers are navigable streams and, as such, are highways of commerce which the public is entitled to use. It also found that the respondent Kemp and members of the respondent organizations have invested substantial sums of money for fishing tackle and equipment, that they hold licenses entitling them to fish within the public waters of this state, and that the appellants' interference with their right to fish the streams causes special injury to them.

Judgment was entered dismissing the state game department, restraining appellants from interfering with the respondent Kemp or other individuals in the exercise of their right to fish the Quillayute and Bogachiel rivers, holding that the two rivers are navigable, in law and in fact, and that title to the beds thereof is vested in the state of Washington. It further enjoined the respondent Kemp from trespassing on appellants' property abutting on the rivers.

A number of assignments of error are directed to the admission of testimony concerning the navigability of the rivers by witnesses who, appellants contend, lacked first-hand knowledge of the facts. Assuming that the testimony is susceptible to this objection, the case was tried to

the court, and, as appellants concede, the trial court is presumed to have disregarded inadmissible testimony, in reaching its decision, where there was competent testimony to sustain its findings. *Murphy v. Murphy,* 44 Wn. (2d) 737, 270 P. (2d) 808.

■ The term "navigable" or "navigability" means such waters as are capable of being used practically for the carriage of commerce. *Strand v. State,* 16 Wn. (2d) 107, 132 P. (2d) 1011.

■■ The term "navigable waters," as used in Art. XVII, § 1, of the state constitution, includes only such waters as are navigable for general commercial purposes. *Watkins v. Dorris,* 24 Wash. 636, 64 Pac. 840. Navigability is always a question of fact. *Proctor v. Sim,* 134 Wash. 606, 236 Pac. 114.

Competent testimony disclosed that: the Quillayute and Bogachiel rivers are navigable and are capable of being used for transportation; in the early days, these two rivers were the only means of access to the area in which they are located; lumber, produce, and supplies for the early settlers were transported up and down these rivers, and for a period of time both rivers were used for the rafting and transporting of pulpwood; the use of the rivers declined, but in 1921, following a severe wind storm, as a result of which all roads were blocked, they were again used as the only highway. The Indians formed the Bogachiel Transportation Company to freight supplies and to transport men up the river. The testimony further shows that the rivers are in the same condition today as they were in the early days.

There is competent testimony concerning the use of the Bogachiel river above the appellants' property for commercial transportation, and the testimony further shows that the Bogachiel and the Sol Duc rivers, where they empty into the Quillayute and adjacent to the appellants' property, are both wider and deeper than the Bogachiel in its upper reaches. All of the witnesses testified that during the freighting season, from October until May, the entire channel of the Quillayute and the channel of the Bogachiel, for a distance extending far beyond the appellants' property, are deep, clear, and navigable.

■ The appellants argue strenuously that the Quillayute is not navigable because in the summer months it is necessary to construct an artificial channel for canoes to navigate over a series of riffles and rapids. They rely upon the rule that, in order for a stream to be navigable or floatable in law, it must be navigable in its natural state. If artificial aids are necessary to make a stream float timber, the stream is not navigable. The rule was first announced in *East Hoquiam Boom & Logging Co. v. Neeson*, 20 Wash. 142, 54 Pac. 1001, wherein it was said:

"It is well settled that a stream which can only be made navigable or floatable by artificial means is not a public highway."

■ However, the rule as announced in 65 C. J. S. 56, § 6 c., is:

"The navigable quality of a watercourse need not be continuous, but the seasons of navigability must occur regularly, and be of sufficient duration to subserve a useful public purpose for commercial intercourse."

The quoted rule was recognized by this court in *Monroe Mill Co. v. Menzel*, 35 Wash. 487, 77 Pac. 813, holding that a stream which, in its natural state, is capable of floating shingle bolts after heavy rains and during freshets occurring regularly during the spring and fall, is a navigable stream.

■ Nor is the navigability, once established, destroyed by disuse. In the case of *People ex rel. Erie R. Co. v. State Tax Comm.*, 266 App. Div. 452, 43 N. Y. S. (2d) 189, it was stated:

"Navigability is not destroyed because of occasional natural obstruction or portages, nor is it necessary that navigation continue at all seasons of the year, and it [a stream] does not lose this characteristic even if it has fallen into disuse for a hundred years."

The court of appeals for the ninth circuit has recognized that the Quillayute in its lower reaches is a navigable stream. See *Taylor v. United States*, 44 F. (2d) 531.

■■ There was evidence to sustain the court's finding that the rivers are navigable. The navigability of the

streams having been established, it follows that, under Art. XVII, § 1, the beds belong to the state, and the appellants had no right to interfere, below the high-water mark, with the public's free use of the streams and were properly enjoined.

While appellants concede that, if proven, the acts alleged would constitute a public nuisance, they contend that the evidence does not establish that the acts were committed, and further, that none of the respondents, other than the attorney general, can maintain this action to abate a public nuisance if any exists, because they cannot show any special injury to themselves.

We have examined the record and find ample evidence to support the court's finding that appellants had interfered with the free use of the streams.

The evidence discloses that the only party to this controversy who has been prevented from fishing in the two rivers in question is the respondent Kemp, who testified that he had been in the habit of fishing these rivers since 1924 until ejected by the appellant William R. Putnam. The trial court found that Putnam had caused the arrest of one individual who had been engaged in fishing in the rivers adjacent to his property, and that he had threatened to prevent respondent Kemp and any other individual from fishing the streams without his express permission.

Under RCW 7.48.210 (Rem. Rev. Stat., § 9921), a private person may maintain a civil action for a public nuisance if it is specially injurious to himself, but not otherwise. Appellants cite a number of cases which discuss this provision, two of which deal with a claimed interference with the right to fish. In one of them, *Lampa v. Graham*, 179 Wash. 184, 36 P. (2d) 543, the court found that the evidence failed to sustain the allegations of the complaint that the plaintiff was or expected to be engaged in fishing in the vicinity of the obstruction which the defendant proposed to erect. In holding that the plaintiff had failed to show any special injury to himself, the court said:

"Here, we see only the use of the channel of the river as a highway, as it is or as it may be used by the general public,

and respondent [plaintiff] must look to the public authorities to abate the nuisance, if any exists."

The case is not authority for the proposition that one who regularly engages in fishing in a stream, the use of which is obstructed, does not suffer an injury different from or greater than that suffered by the general public.

In *Morris v. Graham*, 16 Wash. 343, 47 Pac. 752, it was held that one excluded from a common fishing ground where he had theretofore carried on commercial fishing suffered an injury different from the injury common to the general public. We see no material difference between the injury sustained by one who is prevented from fishing for food and that sustained by one who is prevented from engaging in commercial fishing. The right or privilege invaded is the same in either case.

The respondents West End Sportsmen's Club and Washington State Sportsmen's Council failed to produce any evidence of injury to the corporations. Although some of their members hold fishing licenses and, according to the findings, have fished the rivers in question, the corporations themselves do not hold licenses nor, needless to say, have they fished the rivers. Since they failed to show any special injury to themselves, the West End Sportsmen's Club and Washington State Sportsmen's Council must be dismissed as parties plaintiff.

Appellants urge that they have been prejudiced by the court's ruling in permitting the attorney general to intervene and contend that the trial court abused its discretion in denying their motion for a continuance. It will be recalled that on February 10, 1954, the state game department was permitted to intervene. On June 17, 1954, upon the argument of the demurrer to the complaint in intervention, appellants urged that the proper party to prosecute this action would be the attorney general. Having made such an argument, appellants could hardly have been surprised when the attorney general appeared in the action and adopted the allegations contained in the complaint of the state game department. There is no contention that any

issue of the case has been changed, nor that any witness was unavailable, nor that the intervention of the attorney general increased the burden upon the appellants.

 A motion for continuance is addressed to the sound discretion of the trial court, and the exercise of this discretion will not be disturbed by this court except for a manifest abuse thereof. *Donaldson v. Greenwood*, 40 Wn. (2d) 238, 242 P. (2d) 1038 (1952).

The fact that members of the public are entitled to fish the navigable streams in question, of course, does not give them the right to trespass upon the appellants' land in reaching those streams, and the respondent Kemp has not questioned that part of the trial court's order which restrained him from so doing.

It is ordered that the respondents West End Sportsmen's Club, a corporation, and Washington State Sportsmen's Council, a corporation, be dismissed from the action; and the matter is remanded with instructions to enter a decree in conformity with the views expressed herein. The appellants shall recover one fourth of their costs from each of the respondent corporations; and the respondent Kemp and the attorney general shall recover their costs against the appellants.

HAMLEY, C. J., MALLERY, HILL, and DONWORTH, JJ., concur.