**UTAH PUBLIC EMPLOYEES' ASSOCI-
ATION and Larry Fields, Plaintiffs
and Appellants,**

v.

**STATE of Utah and Scott M. Matheson,
Governor, State of Utah, Defendants
and Respondents.**

No. 16616.

Supreme Court of Utah.

April 3, 1980.

J. Francis Valerga, Salt Lake City, for plaintiffs and appellants.

Robert B. Hansen, Atty. Gen., Michael L. Deamer, Asst. Atty. Gen., Salt Lake City, for defendants and respondents.

HALL, Justice:

This appeal is from a summary judgment upholding a policy directive issued by the Governor of the State of Utah.

Plaintiff, Utah Public Employees' Association (hereafter "Association") challenges the ruling below on behalf of the employees of the Utah Division of Wildlife Resources (hereafter "DWR"). The DWR conducts a yearly drawing for "once-in-a-lifetime" hunting permits. The drawing covers the hunts for buffalo, big horn sheep, and moose, for which a total of approximately 130 permits are issued each year.

Prior to 1978, all DWR employees (some 350 individuals) were free to participate in the permit drawings. In 1978, from among 3,181 applicants, three DWR employees obtained permits. One of these employees, in fact, managed to secure two permits— one for sheep and one for buffalo.

Apparently in response to suggestions of impropriety prompted by what appears to be a disproportionate distribution of permits within the DWR, the Governor issued a policy statement, dated November 7, 1978, barring all DWR employees from participation in future drawings. In response to this directive, the Association brought action to secure injunctive and declaratory relief. Both parties moved for summary judgment. The court granted the state's motion, and ruled that the Governor's actions fell within the constitutionally prescribed prerogatives of his office, and violated no other legal or constitutional restrictions. From that ruling the Association appeals.

The Association's principal contention on appeal is that the directive violates the DWR employees' right of equal protection of the law, in that several less burdensome alternatives exist for accomplishing the same result that the Governor was seeking in taking the policy position in question.[1]

Under traditional equal protection analysis, a classification which treats one group of persons differently from the whole must be merely rationally related to a valid pubic purpose, and less burdensome alternatives need not be examined.[2] However, the Association attempts to characterize the Governor's policy decision as impinging upon a fundamental right, which would require that the classification be subjected to strict scrutiny. Under this analysis, the state must bear the additional burden of establishing the existence of a compelling state interest which justifies the classification.[3]

The catalog of fundamental interests is relatively small to date, and includes such things as the rights to vote, to procreate and to travel interstate. The Association urges that for DWR employees, the opportunity to hunt wild buffalo, sheep, and moose is also a fundamental right. The argument misconstrues the nature of this special constitutional protection. A right or interest does not invoke strict scrutiny just because it is important to the aggrieved party. Only those rights which form an implicit part of the life of a free citizen in a free society can be called fundamental.[4] We do not believe that the right to enter a hunting permit drawing rises to such a standard.

Concluding, therefore, that we are not dealing with a fundamental right and that the strict scrutiny test does not apply, the validity of the Governor's policy must be measured by the traditional rational basis test referred to *supra*. The principles of such analysis were stated in *Lindsley v. Natural Carbonic Gas Company*[5] as follows:

1. The equal protection clause of the 14th Amendment does not take from the

---

1. The suggested alternatives include the following: (1) contract out the entire drawing process to an independent third party; (2) partially contract out the drawing process to an independent third party with minor DWR assistance; and (3) limit the prohibition to only those few DWR employees who are actually involved in the drawing process.

2. 16A Am.Jur.2d Constitutional Law § 750.

3. *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

4. The United States Supreme Court has referred to such rights as "implicit in the concept of ordered liberty." *Palko v. State of Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937).

5. 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1910).

state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary.

2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality.

3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.

4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.

 The Board of Big Game Control has been given the general duty and authority to establish DWR policy in all matters relating to the harvest of big game animals.[6] The Governor, however, has a mandate to supervise the official conduct of all executive and ministerial officers.[7] Clearly, the drawing conducted by the DWR is an official ministerial act[8] under the Governor's supervision. The Governor and all public employees have a responsibility to avoid all actual and potential conflicts of interest between their public duties and their private interests.[9] U.C.A., 1953, 67–16–4 specifically provides, in pertinent part, as follows:

. . . No public officer or public employee shall:

\* \* \* \* \* \*

(3) Use or attempt to use his official position to secure special privileges or exemptions for himself or others.

We are convinced that the Governor's policy was rationally related to its avowed purpose "to clear up any misunderstanding that may arise about the propriety of Wildlife personnel participating in a drawing of this kind." Although there is no evidence of impropriety, it clearly lies within the prerogative of the Governor to adopt a policy so as to avoid even the appearance thereof. If a DWR employee is not directly involved in conducting the drawing, at the very least, he has direct contact with those employees who are. Furthermore, it is arguable that DWR employees with permits could have a competitive edge over hunters given their knowledge about the habits and whereabouts of the herds and access to certain radio sensing devices placed on the animals for herd control and regulated by DWR. Given the valid public purpose of maintaining a completely aboveboard drawing and the fact that the Governor's classification policy was rationally related to such objective, DWR employees have not suffered a violation of their constitutional rights to equal protection.[10]

The Association's only remaining point on appeal is that the lower court erred in granting the state's motion for summary

---

6. U.C.A., 1953, 23–14–6.

7. U.C.A., 1953, 67–1–1(1).

8. A ministerial act may be defined to be one which a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the acts being done. *State Tax Commission v. Katsis*, 90 Utah 406, 62 P.2d 120 (1936).

9. U.C.A., 1953, 67–16–2 provides as follows:
The purpose of this act [Public Officers' and Employees' Ethic Act] is to set forth standards of conduct for officers and employees of the state of Utah and its political subdivisions in areas where there are actual or potential conflicts of interest between their public duties and their private interests. In this manner the legislature intends to promote the public interest and strengthen the faith and confidence of the people of Utah in the integrity of their government. It does not intend to deny any public officer or employee the opportunities available to all other citizens of the state to acquire private economic or other interests so long as this does not interfere with his full and faithful discharge of his public duties.

10. For a comparable holding, see *Salt Lake City Fire Fighters Local 1645 v. Salt Lake City*, 22 Utah 2d 115, 449 P.2d 239 (1969).

judgment in view of the court's admission that facts were in dispute.[11] In its memorandum decision, the court ruled as follows:

Based on the assertions of counsel that there are no questions of fact but only questions of law, the court finds that the policy statement issued by the Governor was within the constitutional powers of the office and gives summary judgment to the Defendant.

However, the court wishes to note that the Plaintiff has alleged that the Governor's policy is too stringent and that the same thing can be accomplished in a "less burdensome and restrictive" way, and this may be so. Affadavits [sic] are provided that assert alternative methods of solving this problem but in the court's opinion they raise questions of fact which the court cannot consider on a motion for summary judgment.

The court feels that the only way to resolve the question on whether there is a less burdensome and restrictive way is at an evidentiary hearing.

In the instant case, the viability of the claim that the existence of a genuine issue of material fact should preclude summary judgment is admittedly contingent upon the disposition of the equal protection argument.[12] Basically, the claim is that if the Governor's policy was violative of DWR employees' rights to equal protection, then summary judgment was improper because of the question of fact raised by the affidavits suggesting alternative methods of dealing with the problem. Having concluded the equal protection argument against the Association, we need not reach the claim of factual dispute as to alternatives.

Affirmed.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.

11. Rule 56(c), Utah Rules of Civil Procedure.

12. Not only had both parties sought summary judgment (thereby indicating an absence of factual dispute), but in its brief on appeal the

Association concedes that it is interested in having the case remanded for an evidentiary hearing only if it is successful on the equal protection argument.